No. 25.

E. R. MOORE ET AL. VS. POLICE JURY OF BOSSIER PARISH ET AL.

Act No. 31 of the Legislature of 1880, "prescribing the manner of changing parish lines and of removing parish seats," is null and void, because violative of Article 29 of the Constitution, which declares that : "Every law enacted by the General Assembly shall embrace but one object, and that shall be expressed in the title."

The same Act No. 31 is also in conflict with Article 250 of the Constitution, which provides that " All laws changing parish lines or removing parish seats, shall, before taking effect, be submitted to the electors of the parish or the parishes to be affected thereby, at a special election held for that purpose, and be adopted by a majority of votes of each parish cast at such election."

APPEAL from the Second Judicial District Court, parish of Bossier. *Drew, J.*

S. M. Nutt and J. A. Snider for Plaintiffs and Appellants.

B. F. Fort for Intervenor and Appellant.

Wise & Herndon for Defendants and Appellees.

First—The unconstitutionality of an act of the Legislature will not be declared by courts, unless it is manifestly so.

Second—Art. 29 of the Constitution is not violated, when the bill includes legislation of cognate matters, and does not embrace subjects diverse in their nature. Cooley's Constitutional Limitations, 142.

Third—Elections will not be declared null when the voters have exercised their rights untrammeled, and no complaint made, except the non-observance of merely directory provisions of the election law Weber vs. Wilton, 29 A. 610.

---

The opinion of the Court was delivered by

LEVY, J. . The plaintiffs, E. R. Moore et al., brought suit to annul an election held in the parish of Bossier, on the 22d day of July, 1880, under the provisions of an act of the General Assembly, No. 31, approved March 10th, 1880, entitled : " An Act prescribing the manner of changing parish lines and of removing parish seats," and for injunction against said police jury prohibiting the holding of a second election ordered by that body for the purpose of deciding as to the place to which the removal of the parish seat of said parish should be made. In their petition plaintiffs alleged that the " pretended election held on the 22d of July, 1880, was null and void for the reason that it was not held in conformity with Act No. 31, approved March 10th, 1880, and was in violation of Article 250 of the Constitution of the State;" they further allege that said police jury of Bossier parish had no right to order said election of 22d of July, 1880, for the reason that one-third of the property taxpayers of said parish, at the time said election was ordered, could not have been known, as the assessment for the year 1880 had not been made, and no registration of voters had been made as required by the general election laws of the State ; further, that by the terms of said Act No. 31 and the act of the police jury, Bellevue was entitled to be and was voted for at said election of 22d of July, and received and had counted by said police jury 1054 votes, being the highest number of votes cast for any of the places voted for, as to which the parish seat should be removed, notwithstanding which, by the order for the second election, Bellevue was excluded as one of the places to be voted for at such second election, to which right Bellevue was entitled. They allege that irreparable injury would accrue to them by removal of the parish seat from Bellevue, etc.; that the proceedings

of the police jury in the premises are illegal and unconstitutional. The injunction prayed for was issued.

Defendants filed an exception in which they prayed for the dismissal of the suit, on the ground that "there is no law authorizing an inquiry into or contest of the election held on the 22d of July, 1880, and none of the requirements of the law applicable to contests of election have been complied with, and that it is too late, more than thirty days having elapsed since said election was holden, to inquire into its validity." This exception was, by the court *a qua*, referred to the merits.

Defendants, in their answer, averred that the police jury had complied with the law ordering the holding and promulgation of the election; that a majority of the electors of the parish having voted, in favor of a removal of the parish seat, Bellevue is not entitled to be placed in the list of the places to be voted for at the second election. They pray for dissolution of the injunction, and that the election between Bellevue and Coleville should be proceeded with and promulgated according to law.

B. F. Fort intervened in the suit, setting up interest in himself, averring that the removal of the parish seat would work irreparable injury to him, and that he would thereby sustain damages for various causes, set forth in an amount exceeding one thousand dollars. He avers that said Act No. 31 "has no effect, the same being null and void as violating the Constitution of the State of Louisiana, and particularly Articles 19, 29 and 250 thereof. He prayed for perpetuation of the injunction. This intervention was put at issue.

The constitutionality of Act No. 31 of the General Assembly of Louisiana, approved March 10th, 1880, is clearly brought before us for our decision and adjudication. Art. 29 of the Constitution of 1879, declares : " Every law enacted by the General Assembly shall embrace but one object, and that shall be expressed in the title." The title of Act No. 31 is : "An act prescribing the manner of changing parish lines and of removing parish seats." We are of opinion that two objects, distinct and separate, and not cognate, are embraced in this act and clearly indicated even by the title itself. The framers of the Constitution regarded the objects set forth in the act and its title as being distinct, for in article 250 we find the provision : " All laws changing parish lines or removing parish seats shall, before taking effect, be submitted, etc." To remove parish seats is one object, in which the people of one parish alone have a direct interest ; the change of parish lines affects the interests of two or more parishes. The change of parish lines does not involve the change of parish seat, and, *vice versa*, removal of parish seat has no necessary connection with change of parochial boundaries. We must not be understood as deciding that an act, which contains in

its body provisions which are incidental to the object declared in the title of the bill, or details and minutiæ necessary and intimately connected with such object, would render such act unconstitutional, but, as in this act, the incorporation of several distinct objects, neither necessary to carrying into effect the other, would render the whole act nugatory, as being violative of constitutional enactment. We adopt the doctrine laid down by Judge Cooley in his work on Constitutional Limitations, p. 144, where he says : " The general purpose of the provisions is accomplished when a law has but one general object, which is fully indicated by its title. To require every end and means necessary or convenient for the accomplishment of this general object to be provided for by a separate act relating to that alone, would not only be unreasonable, but would actually render legislation impossible. It has accordingly been held that the title of an act to establish a police government for the city of Detroit was not objectionable for its generality, and that all matters properly connected with the establishment and efficiency of such a government, including taxation for its support, and courts for the examination and trial of offenders, might constitutionally be included in the bill under its general title." And this learned author, in the same work, p. 148, says : " But if the title to the act actually indicates, and the act itself actually embraces, two distinct objects, when the constitution says it shall embrace but one, the whole act must be treated as void, from the manifest impossibility in the court choosing between the two, and holding the act valid as to the one and void as to the other."

Again, Article 250 of the Constitution provides : " All laws changing parish lines or removing parish seats shall, before taking effect, be submitted to the electors of the parish or the parishes to be affected thereby, at a special election held for that purpose, and be adopted by a majority of votes of each parish cast at such election." It is the evident and clearly expressed intention of the Constitution that laws on the above-mentioned subjects must be submitted to the people for their approval and ratification, and we cannot deduce any other inference than that a general law providing for change of parish lines and removal of parish seats is not contemplated in the organic law, but that in each case when either of these objects are sought, a special law in accordance with the provisions and requirements of article 48 is intended to be past, in which the electors of the parish or parishes affected thereby shall cast their votes as pointed out in article 250.

Hence, if article 21 had not been obnoxious to the objection stated, and had embraced the sole object of removal of the parish seat, under the views just expressed, it would have conflicted with the Constitution, and the election held under it would have been invalid.

Moore et al. vs. Police Jury of Bossier Parish et al.

It is, therefore, ordered, adjudged and decreed that the judgment of the lower court be annulled, avoided and reversed; and proceeding to render such judgment as should have been rendered, it is ordered, adjudged and decreed that the injunction issued in this suit be perpetuated, and that the order for the second election, made by the police jury of the parish of Bossier, be annulled and set aside, and the election held on the 22d of July, 1880, under and by virtue of Act No. 31, approved March 10th, 1880, is declared to be invalid. Appellees to pay the costs of both courts.