199 So.2d 554 (1967)
COASTAL STATES GAS PRODUCING COMPANY, Plaintiff-Appellee,
v.
STATE MINERAL BOARD et al., Defendants-Appellants, and
Pan American Petroleum Corporation et al., Defendants-Appellees.
No. 2022.
Court of Appeal of Louisiana, Third Circuit.
June 1, 1967.
*555 Jack P. F. Gremillion, James E. Phillips, Jr., by John L. Madden, Baton Rouge, Camp, Carmouche, Palmer, Carwile & Barsh, by Harry E. Barsh, Jr., Lake Charles, for defendants-appellants.
J. B. Holloman, Jr., Lake Charles, for plaintiff-appellee.
R. Cornelius Smith, New Orleans, Jerry D. Kirk, Vance Plauche, Lake Charles, Ellis W. Thompson, Sulphur, Marcantel & Cassidy, by Chas. Cassidy, Jennings, Scofield, Cox & Bergstedt, by James J. Cox, Lake Charles, Ruby Willie Miller, in pro. per., for defendants-appellees.
Before TATE, FRUGE and HOOD, JJ.
TATE, Judge.
In this concursus proceeding, the issue is whether prescription prevents the State from attacking an 1885 transfer by it as invalid insofar as it includes the bed of a navigable stream. We hold that the prescriptive statute does not protect the transfer in question and that therefore the State owns the mineral royalties attributable to production from the river bottom.
The plaintiff Coastal, holder of producing mineral leases, deposited into the registry of the court that portion of the royalty payments attributable to production from the bed of the Bayou Lacassine, a navigable stream. Impleaded to assert their respective claims were two sets of opposing parties: the State Mineral Board and the Register of the State Land Office (collectively referred to hereafter as the State); and *556 several private landowners (Pan American Production Corporation and others), the appellees, all of whom are the descendants-in-title of Pierre Broussard, who acquired the parent tract from the State in 1885.
The trial court held that the private landowners, rather than the State, hold title to the disputed bayou bed. Accordingly, the court awarded to them the accrued mineral royalties deposited in the registry of the court. The State appeals from that judgment.
The primary issue in this appeal is the scope of Louisiana Act 62 of 1912 (now LSA-R.S. 9:5661). Before it was amended in 1950, this statute provided that proceedings to annul "* * * any patent issued by the State of Louisiana, duly signed by the Governor of the State and the Register of the State Land Office, and of record in the State Land Office, or any transfer of property by any sub-division of the State, shall be brought * * * within six years from the passage of this Act."
The appellee-landowners contend that, because of the six-year prescriptive period provided by this enactment the State cannot now attack their claim to the portion of the navigable water bottom included within their description of their acquisition in 1885 by sale from the State of a tract described by governmental section.[1] It is conceded that a portion of the bed of the Bayou Lacassine is included within the governmental half-section described ("the West Half") as conveyed,[2] and that the Bayou Lacassine is presently navigable and was navigable in 1812 when Louisiana was admitted to the Union.

Acquisition of the Property by Broussard.
Broussard bought the 80-acre half-section of land (the West Half) through which the disputed water bottom runs at a public sale in 1885. There was no express reservation in the sale of the bed of Bayou Lacassine.
The land which Broussard purchased was originally part of the sixteenth section school lands granted to the State of Louisiana by the United States government. See Barnes, The Origins of Private Titles in Louisiana, 27 Tul.L.Rev. 59, 67, 69 (1957). The sale was properly made under the authority of the Louisiana Revised Statutes of 1870, Section 2942 et seq. (see LSA-R.S. 41:711-41:724).
The statutory authority pertinently provides that, if approved by majority vote, the state school lands of a township shall be sold by the parish treasurer at a public auction, and that the parish treasurer is "further authorized and required to execute all acts of sale on behalf of the State for any such lands sold * * *." La.R.S. 2960 (1870). Citing this statutory section as authority, the proces verbal and adjudication executed by the parish treasurer in the present case stated that he had sold at public auction "in the name of the State of Louisiana through David J. Reid, Sheriff" the described sixteenth section lands to the following purchasers, including the West Half to the ancestor-in-title of the appellee landowners.
We emphasize the circumstance that the deed represented a sale by the State (not by a subdivision of it) and that it was signed by the parish treasurer (not by the Governor and by the State Register). Our decision *557 is ultimately based upon these distinguishing features of the deed in question as not affording to it the protection of the prescriptive statute pleaded, nor of any other that we could find.
No transfer of the West Half other than treasurer's deed and no patent to it by the state was ever issued to Broussard or to any of his descendants-in-title.

The Scope of the Six-Year Prescriptive Statute.
The appellee landowners rely solely upon the six-year prescription provided by Act 62 of 1912 as preventing an attack by the State upon the deed to them as invalid insofar as conveying water bottoms within the tract described as sold. California Company v. Price, 225 La. 706, 74 So.2d 1; Humble Oil and Refining Co. v. State Mineral Board, 223 La. 47, 64 So.2d 839. The 1912 act protects from attack after six years only (a) any "transfer * * * by any sub-division of the state and (b) any "patent issued by the State of Louisiana duly signed by the Governor * * * and the Register of the State Land Office." Act 62 of 1912 (more fully quoted above). The present conveyance being neither, we are required by the prevailing jurisprudence to hold that the 1912 Act is not broad enough in scope to prevent an attack on a deed of this nature.
In Chapman-Storm Lumber Co. v. Board of Com'rs, 196 La. 1039, 200 So. 455, our Supreme Court, through Fournet, J., refused to apply the 1912 prescriptive statute to prevent attack upon a transfer of land by the state to a subdivision. The reason was that the conveyance in question, being a "transfer", was not a patent by the state within the protection of the statute. 200 So. 459-460.[3] The Supreme Court cited with approval the similar ruling in Lovell v. Dulack Cypress Co., Ltd., 31 F.Supp. 919 (E.D. La., 1940).
Thus, the 1912 statute protects "patents" by the State (those signed by the Governor and State Register, at any rate) and "transfers" by State subdivisionsbut not transfers by the State. We may deem the distinction arbitrary and not founded on rational purpose. Nevertheless, the terms of the 1912 prescription statute determine its application, and we cannot extend its scope to protect analogous transactions. Prescription is stricti juris, and prescriptive statutes cannot be extended by analogy to cases beyond the strict letter of the law. State v. Stewart Bros. Cotton Co., 193 La. 16, 190 So. 317; Hayes v. Levy, La.App. 2 Cir., 81 So.2d 172 (see cases cited at 174); see 53 C.J.S. Limitation of Actions Section 33.

The Validity of the 1885 Sale of Navigable Water Bottom.
On the basis of the doctrine of "inherent sovereignty" and of LSA-Civil Code Art. 453, our courts have established that the beds of navigable waters are not susceptible of private ownership. Miami Corporation v. State, 186 La. 784, 173 So. 315 (1937) and authorities therein cited; State v. Scott, La.App. 1 Cir., 185 So.2d 877 (1966), certiorari denied; Milne v. Girodeau, 12 La. 324 (1838); 1 Yiannopoulos, Civil Law of Property, Section 32 (1966); Comment, Ownership of Beds of Navigable Waters, 30 Tul.L.Rev. 155 (1955); Note, Beds of Navigable Waters Susceptibility of Private Ownership, 14 La.L.Rev. 267 (1953). Further, even assuming *558 that there was no legal impediment to a deliberate sale by the State of navigable water bottoms, the State's strong public policy requires that a conveyance including navigable water bottoms within the described area must be strictly construed against the grantee; therefore, the water beds owned by the state by virtue of its inherent sovereignty are not included within the conveyed property described as "school lands", at least in the absence of strong indicia to the contrary. State v. Bayou Johnson Oyster Co., 130 La. 604, 58 So. 405, 409-410 (1910) (excluding water beds from the sale of "swamp and overflowed land"). The navigable water bottoms within a school land section are not included within school lands granted to the State. See Terrebonne Parish School Board v. Texaco, Inc., La. App. 1 Cir., 178 So.2d 428, certiorari denied 248 La. 465, 179 So.2d 640.
Nevertheless, such an alienation of water beds under an arm of the sea was upheld in California Company v. Price, 225 La. 706, 74 So.2d 1 (1954). The reason the alienation was upheld, however, was that the court inferred a legislative approval of the sale in that suit by the passage of Act 62 of 1912. Since prior to 1921 the only prohibition against such alienations was legislative rather than constitutional,[4] prior to then the legislature could permit the alienation of water bottoms by the subsequent enactment of a prescriptive statute curing invalid sales of them. No such legislative approval can be found in the instant case, however, since Act 62 of 1912 does not, by its terms, apply to a conveyance such as the one involved here. The general rule of the Miami Corporation case therefore applies to invalidate the alienation of the navigable water bottom.
We hold, therefore, that the 1885 deed of State school lands by the parish treasurer did not convey the ownership of any part of the bed of the Bayou Lacassine, a navigable stream, even though it may have been included within the description of the school lands sold.
Decree.
For the reasons assigned, we reverse the trial court judgment, and we hold that the State of Louisiana instead of the private claimants is the owner of the following described property:
The beds and bottoms of Bayou Lacassine as it traverses the West Half of the Northwest Quarter (W-½ of NW-¼), Section 16, Township 11 South, Range 5 West, Louisiana Meridian.
We further decree that, accordingly, the State of Louisiana is the owner of the funds deposited in this proceeding as the mineral production attributable to these water bottoms, so that judgment is entered in favor of the State Mineral Board of the State of Louisiana and of the Honorable Ellen Bryan Moore, Register of the State Land Office, ordering that state funds be released and paid to the State of Louisiana through them.
Further, we enter judgment denying claims of the following defendants-appellees to the property described above or to mineral production attributable thereto: Pan American Petroleum Corporation, Paul Zimmerman, William E. Richardson, Douglas Mouton, Harvey Miller, Nella Hungerford Mouton, and Clyde Mouton.
Finally, both the costs of this suit fixed by the trial court and the costs of this appeal are taxed to the sums deposited in the registry of the court. LSA-C.C.P. Art. 4659.
Reversed and rendered.
NOTES
[1] The description of the land conveyed was as follows: "Lot No. 4, being the W ½ of NW ¼ of Section 16 Tp. [Township] 11 S. Range 5 West containing 80 acres, more or less * * *." This tract will be referred to as the West Half.
[2] On April 25, 1963, 17.55 acres of the West Half was included within a production unit created by the Commissioner of Conservation. Of this unit, 5.34 acres comprises the bed of Bayou Lacassine. The plaintiff Coastal deposited into court the production royalties attributable to that 5.34 acres.
[3] The transfer in question was a conveyance by the State to the defendant levee board under Act 97 of 1890 of lands adjudicated to the State for non-payment of taxes. 200 So. 459, syllabus 6; Act 97, Section 11. Under this statutory authority (Section 11), the State Auditor and the State Register executed instruments of conveyance of state lands, which were duly recorded in the respective parishes. The Supreme Court annulled a transfer by the state to the levee board on the ground that the original tax adjudication was invalid. In doing so, the court specifically overruled a plea of six-year prescription to the attack upon the transfer of the State to it, which plea was filed by the agency and its mineral lessee and was based solely upon the 1912 Act here pleaded.
[4] Of course, any alienation of a navigable water bottom by the State is now constitutionally prohibited by Louisiana Constitution of 1921, Article 4, Section 2.